James Vlahakis (Illinois St. Bar No. 6230459)
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
Telephone: (630) 581-5456
Email: jvlahakis@sulaimanlaw.com
*Attorney for Plaintiff (pro hac vice)*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nick Fisher, individually and on behalf of a nationwide class of similarly situated individuals,<br><br>        Plaintiff,<br><br>v.<br><br><br>Modernize, Inc.; John Doe Home Improvement Providers, Nos. 1-10; and John Doe Defendant Lead-Generators, Nos. 1-10,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1.  VIOLATION OF THE  TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 ET SEQ.;**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff NICK FISHER ("Plaintiff"), individually and on behalf of a nationwide class of similarly situated individuals, by and through his attorney, James C. Vlahakis, brings this this civil action pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.,* for statutory damages, declaratory relief and injunctive relief:

### I.        Introduction

1.    The TCPA makes it unlawful for a person to call another person's cellular telephone using an "automatic telephone dialing system" or "artificial or prerecorded voice" without the express consent of the person being called. 47 U.S.C. § 227(b)(1)(A)(iii).

2.    Starting on or about October 28, 2017, and continuing until at least September of 2018 (hereafter, the relevant time period of the complaint and/or the "time of the calls in question" as noted in footnotes 5 and 6), Defendant MODERNIZE, INC. ("Modernize") called Plaintiff's cellular telephone number without his express permission for the purpose of delivering unsolicited telemarketing messages that promoted various home improvement projects, contractors and/or services of companies that were affiliated with and/or under contract with Modernize (hereafter "Home Improvement Services" or "Home Improvement Service").

3.    Each of the calls promoting Modernize's Home Improvement Services violated the TCPA because Modernize's calls were placed with an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1).

4.    Modernize violated Section 227(b)(1)(A)(iii) of the TCPA because it did not have Plaintiff's express permission to call his cellular phone number with an ATDS when Modernize called his cellular phone number for the purpose of encouraging Plaintiff to purchase  Modernize's Home Improvement Services.

**II.    Parties, Jurisdiction and Venue**

5.    During the relevant time period of October 2017, to the present day, Plaintiff was a citizen and  resident of the State of Arizona, and a natural "person" as defined by 47 U.S.C. §153(39).

6.    During the relevant time-period of October 2017, to the present day, Plaintiff's cellular telephone number was 602-750-6084 (hereafter "Plaintiff's cellular number").

7.      Area code 602 was known by Modernize at the times that it called Plaintiff's cellular telephone number to be an area code associated with the State of Arizona and the general location of Phoenix, Arizona.

8.      Modernize is incorporated under the laws of the state of Delaware and claims to be headquartered in Texas.

9.      Modernize is, and at all times mentioned herein was, a corporation and a "person" as defined by 47 U.S.C. §153(39).

10.      Subject matter jurisdiction exists pursuant to 28 U.S.C. §§1331 and 1337 because this is a civil action for damages arising pursuant to the TCPA and this case arises out of violation of federal law.

11.      Alternatively, this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d)(2) because the amount in controversy exceeds $5,000,000, in the aggregate (exclusive of interest and costs).

12.      The amount in controversy easily exceeds $5,000,000, because the TCPA provides for a minimum of $500 per violation, and Plaintiff asserts a national class, which will result in at least one Class member from a different state.

13.      Venue is proper in this District because Plaintiff is a citizen of Arizona and resides in district and received the telephone calls in question in this District.

14.      Venue is also proper in this District pursuant to 18 U.S.C. § 1391(b) because Modernize is subject to personal jurisdiction within this District by virtue of the fact that it has conducted significant and continuous advertising and telemarketing to citizens of Arizona and residents within this District.

15.    Further, as set forth below, venue is also proper in this District because Modernize has placed telephone calls to residents of this District who were assigned (602) based area code numbers, which are known by Defendant to be associated with Phoenix, Arizona.

16.    Venue and personal jurisdiction exist in this District pursuant to U.S.C. §§ 1391(b)-(c) and 1441(a) because Modernize, as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time a civil action is commenced.

17.    Venue and personal jurisdiction is proper against the JOHN DOE DEFENDANT LEAD-GENERATORS and the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS[1] because they plausibly called Plaintiff from this District and/or placed calls to putative class members who reside in this District.

18.    The JOHN DOE DEFENDANT LEAD-GENERATORS, NOS. 1-10, are currently unknown businesses who appear to have called Plaintiff's cellular telephone number, on at least one occasion, to promote Modernize's Home Improvement Services, and did so for the benefit of Modernize, with Modernize's knowledge and approval.

19.    In particular, consistent with Modernize's business model, in addition to Modernize calling Plaintiff's cellular number, one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS called Plaintiff's cellular telephone number because one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS considered Plaintiff to be a potential customer (hereafter "Lead") of Modernize's Home Improvement Services.

---

[1] The JOHN DOE DEFENDANT LEAD-GENERATORS and the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS are sometimes collectively referred to as the "JOHN DOE DEFENDANTS." See, e.g., Sections VIII-XI of this Class Action Complaint. Once their identifies are revealed in discovery, they will be specifically named in an Amended Class Action Complaint.

4

20.    It appears plausible from the investigation to date, that one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS called Plaintiff's cellular telephone number as a potential Lead to promote Modernize's Home Improvement Services.

21.    As described below, one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS called Plaintiff's cellular telephone number with an ATDS to promote Modernize's Home Improvement Services.

22.    As described below, one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS called Plaintiff's cellular telephone number with an ATDS to promote Modernize's Home Improvement Services with Modernize's knowledge or approval.

23.    Based upon court filings identified in other court proceedings, Modernize entered into a contract with one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS whereby at least one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS called the cellular numbers of Plaintiff to promote Modernize's Home Improvement Services.

24.    The JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS, NOS. 1-10, are currently unknown businesses who appear to have called Plaintiff's cellular telephone number, on at least one occasion, to promote or provide Modernize's Home Improvement Services, and did so for the benefit of Modernize, with Modernize's knowledge and approval.

25.    In particular, consistent with Modernize's business model, in addition to Modernize calling Plaintiff's cellular number, one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS called Plaintiff's cellular telephone number because one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS intended to actually provide Plaintiff with some type of home improvement job or service as a result of promoting Modernize's Home Improvement Services.

26.    One or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS called Plaintiff to promote or provide Modernize's Home Improvement Services.

27.    As described below, one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS called Plaintiff's cellular telephone number to promote or provide Modernize's Home Improvement Services.

28.    As described below, one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS called Plaintiff's cellular telephone number with an ATDS to promote or provide Modernize's Home Improvement Services.

29.    As described below, one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS called Plaintiff's cellular telephone number with an ATDS to promote or provide Modernize's Home Improvement Services with Modernize's knowledge or approval.

30.    Based upon court filings identified in other court proceedings, Modernize entered into a contract with one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS whereby at least one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS called the cellular numbers of Plaintiff and other persons to provide and/or promote Modernize's Home Improvement Services.

**III.    Summary of Modernize's Business Operations**

31.    Modernize's website has described its business model as follows:



32.    As part of Modernize's business, it has claimed that it "is in the business of providing homeowners with resources to assist them in pursing home improvement renovations, remodels, or upgrades."

33.    Modernize claims that "third-parties also provide Modernize with contact information for homeowners seeking quotes, information, or consultation from qualified contracts."

34.    Modernize has stated that "[e]ach request for a consultation, quote, or information, whether obtained by Modernize directly from a homeowner or from a third party, is referred to as a 'lead'."

35.    Modernize has admitted that it utilized so-called "third-party 'call centers' to generate 'leads' for [telemarketing] calls."

7

36.    Modernize has indicated in a court filing, "a third party called Xiingo has sold Modernize" at least one "lead." Modernize, in this statement, did not indicate whether it or Xiingo had express permission to call the lead with an ATDS.

37.    Modernize has represented that it used to have a "business relationship with Ace Solutions (a data vendor that provided the 'lead' for Plaintiff Hopkins)." Plaintiff Amanda Hopkins eventually was appointed as a class represented in a putative class action filed in the U.S. District Court for the District of Massachusetts, *Hopkins v. Modernize, Inc.*, 17-cv-40087 (D. Mass).

38.    One of the "[r]emedial [m]easures" taken by Modernize as part of the settlement of the *Hopkins v. Modernize, Inc.* class action involved Modernize agreeing to "terminate its business relationship with Ace Solutions . . . and its principal, Cecil Samuels, and to refrain from placing future calls based on 'leads' or other data from ACE Solutions."

39.    One of the "[r]emedial [m]easures" taken by Modernize as part of the settlement of the *Hopkins v. Modernize, Inc.* class action involved Modernize taking "steps to document the consent it receives from consumers for future calls[.]"

40.    By January 10, 2019, Modernize represented to the district court in settlement of the *Hopkins v. Modernize, Inc.* class action that it had "engaged a consultant services (Active Prospect and Lead ID) to verify the TCPA compliance of numbers that it calls."

41.    On information and belief, Modernize did not utilize Active Prospect or Lead ID to verify the TCPA compliance of numbers that it called in 2017, including when it called Plaintiff's cellular number.

42.    If Modernize was utilizing Active Prospect or Lead ID to verify the TCPA compliance of numbers that it called in 2017, Plaintiff should never have been called by Modernize for the purpose of promoting Modernize's Home Improvement Services.

8

43.    If Modernize was utilizing Active Prospect or Lead ID to verify the TCPA compliance of numbers that it called in 2017, Modernize's calls should have stopped when Plaintiff told the person on the other of the call to stop calling him.

44.    On information and belief, Modernize did not utilize Active Prospect or Lead ID to verify the TCPA compliance of numbers that it called in 2018, including when it called Plaintiff's cellular number.

45.    If Modernize was utilizing Active Prospect or Lead ID to verify the TCPA compliance of numbers that it called in 2018, Plaintiff should never have been called by Modernize for the purpose of promoting Modernize's Home Improvement Services.

46.    If Modernize was utilizing Active Prospect or Lead ID to verify the TCPA compliance of numbers that it called in 2018, Modernize's calls should have stopped when Plaintiff told the person on the other end of the call to stop calling him.

47.    The telephone calls that were made to Plaintiff's cellular telephone were consistent with Modernize's above identified business model (but in violation of the TCPA) because Modernize did not have Plaintiff's express written permission to call Plaintiff's cellular telephone number with an ATDS.

48.    On information and belief, based upon documents filed in other federal court proceedings against Modernize, Modernize likely obtained Plaintiff's cellular telephone number from authorized, affiliated or approved lead-generator.

49.    Plaintiff, however, did not provide Modernize with express permission to call his cellular phone with an ATDS to connect him with human operator who attempted to market to him Home Improvement Services.

50.    According to Modernize, "[p]rior to September 25, 2015, Modernize was known as Home Improvement Leads, Inc."

51.    According to Modernize, "[o]n September 25, 2015, Home Improvement Leads, Inc. changed its name to Modernize, Inc."

52.    According to Modernize, "[s]ince September 25, 2015, Modernize has at times conducted business as 'Home Improvement Leads, Inc.'"

53.    On information and belief, based upon documents filed in other federal court proceedings against Modernize, on one or more occasions, Modernize may have authorized or approved one or more of the JOHN DOE DEFENDANTS to call Plaintiff's cellular phone number with an ATDS to promote or provide Modernize's Home Improvement Services.

54.    Plaintiff, however, did not provide any of the JOHN DOE DEFENDANTS with express permission to call his cellular phone with an ATDS to promote Modernize's Home Improvement Services.

## IV.    Summary of the TCPA and Certain Statutory Definitions

55.    The TCPA makes it unlawful for a person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."  47 U.S.C. § 227(b)(1)(A)(iii).

56.    47 CFR 64.1200(a)(1)(iii) provides that "[n]o person or entity may: . . . initiate any telephone call (other than a call . . . made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."

57.    For calls that include an advertisement, or constitute telemarketing, 47 CFR 64.1200(a)(2) provides that "[n]o person or entity may: . . . [i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party[.]"

58.    In enacting the TCPA, Congress wrote that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, *regardless of the type of call*…."  Telephone Consumer Protection Act of 1991, Pub. L. 102–243, §§ 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991) (emphasis supplied).

59.    The TCPA defines the term "automatic telephone dialing system" to mean "equipment which has the capacity - (A) to store or produce telephone number to be called, using a random or sequential number generator' and (B) to dial such numbers."  *See* 47 U.S.C. § 227(a)(1).

60.    The TCPA defines the term "unsolicited advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  *See* 47 U.S.C. § 227(a)(5).

61.    47 CFR § 64.1200(d) states that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

62.    47 CFR § 64.1200(d) states "[t]he procedures instituted must meet the following minimum standards:

11

**(1)** ***Written policy.*** Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

**(2)** ***Training of personnel engaged in telemarketing.*** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

**(3)** ***Recording, disclosure of do-not-call requests.*** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .

**(4)** ***Identification of sellers and telemarketers.*** A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

**(5)** ***Affiliated persons or entities.*** In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

**(6)** ***Maintenance of do-not-call lists.*** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

63.     47 CFR § 64.1200(e) states that "[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991'."

12

64.    Pursuant to 47 CFR § 64.1200(f)(8), the term "prior express written consent" means:

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

65.    Section 64.1200(f)(8) states that a written agreement shall:

> (i) . . . include a clear and conspicuous disclosure informing the person signing that:
>
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

66.    47 CFR § 64.1200(f)(9) states that "[t]he term *seller* means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."

67.    47 CFR § 64.1200(f)(11) states that "[t]he term *telemarketer* means the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."

68.    47 CFR § 64.1200(f)(12) states that, "[t]he term *telemarketing* means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person".

69.    47 CFR § 64.1200(f)(15) states that, "[t]he term *unsolicited advertisement* means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in

13

writing or otherwise."

**V.    Defendants' Conduct Falls Within the Definitions of the TCPA**

70.    As described below, the calls that Plaintiff received from Modernize were unsolicited advertisement as defined by § 227(a)(5) of the TCPA.

71.    Modernize acted as a "seller" as this term is defined by 47 CFR § 64.1200(f)(9) by calling or causing Plaintiff's cellular telephone to be called with an ATDS for the purpose of promoting or purchasing Modernize's Home Improvement Services.

72.    Alternatively, in conjunction with and in agreement with one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS, Modernize acted as a "seller" as this term is defined by 47 CFR § 64.1200(f)(9) by authorizing one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS to call Plaintiff's cellular telephone with an ATDS to promote Modernize's Home Improvement Services.

73.    Alternatively, in conjunction with and in agreement with one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS, Modernize acted as a "seller" as this term is defined by 47 CFR § 64.1200(f)(9) by authorizing one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS to call Plaintiff's cellular telephone with an ATDS for the purpose of promoting and/or providing Modernize's Home Improvement Services.

74.    Modernize, acted as a "telemarketer" as this term is defined by 47 CFR § 64.1200(f)(11) by calling or causing Plaintiff's cellular telephone to be called with an ATDS to promote its Home Improvement Services.

75.    Alternatively, in conjunction with and in agreement with one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS, Modernize acted as a "telemarketer" as this term is defined by 47 CFR § 64.1200(f)(11) by authorizing one or more of the JOHN DOE DEFENDANT

14

LEAD-GENERATORS to call Plaintiff's cellular telephone with an ATDS to promote Modernize's Home Improvement Services.

76.    Alternatively, in conjunction with and in agreement with one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS, Modernize, acted as a "telemarketer" as this term is defined by 47 CFR § 64.1200(f)(11) by authorizing one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS to call Plaintiff's cellular telephone with an ATDS for the purpose of promoting and/or providing Modernize's Home Improvement Services.

77.    Modernize, engaged in "telemarketing" as this term is defined by 47 CFR § 64.1200(f)(12) by calling or causing Plaintiff's cellular telephone to be called with an ATDS for the purpose of promoting and encouraging the purchase of its Home Improvement Services.

78.    Alternatively, in conjunction with and in agreement with one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS, Modernize engaged in "telemarketing" as this term is defined by 47 CFR § 64.1200(f)(12) by authorizing one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS to call Plaintiff's cellular telephone with an ATDS for the purpose encouraging the purchase of Modernize's Home Improvement Services.

79.    Alternatively, in conjunction with and in agreement with one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS, Modernize engaged in "telemarketing" as this term is defined by 47 CFR § 64.1200(f)(12) by authorizing one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS to call Plaintiff's cellular telephone with an ATDS for the purpose of encouraging the purchase of Modernize's Home Improvement Services.

80.    Modernize, engaged in "unsolicited advertisement[s]" as this term is defined by 47 CFR § 64.1200(f)(15) by calling or causing Plaintiff's cellular telephone to be called with an ATDS

to promote its Home Improvement Services.

81.    Alternatively, in conjunction with and in agreement with one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS, Modernize engaged in "unsolicited advertisement[s]" as this term is defined by 47 CFR § 64.1200(f)(15) by authorizing one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS to call Plaintiff's cellular telephone with an ATDS to promote Modernize's Home Improvement Services.

82.    Alternatively, in conjunction with and in agreement with one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS, Modernize engaged in "unsolicited advertisement[s]" as this term is defined by 47 CFR § 64.1200(f)(15) by authorizing one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS to call Plaintiff's cellular telephone with an ATDS for the purpose of promoting and/or providing Modernize's Home Improvement Services.

**VI.    Modernize Did Not Adequately Describe How it Would Acquire Leads or that Purported Leads Like Plaintiff Would be Called By and ATDS**

83.    Plaintiff and the putative class members did not knowingly consent to allow Modernize to call their cellular telephone numbers with an ATDS to promote Modernize's Home Improvement Services.

84.    Plaintiff and the putative class members did not knowingly consent to allow any of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS to call their cellular telephone numbers with an ATDS to promote and/or provide Modernize's Home Improvement Services.

85.    Plaintiff and the putative class members did not knowingly consent to allow any of the JOHN DOE DEFENDANT LEAD-GENERATORS to call their cellular telephone numbers with an ATDS to promote Modernize's Home Improvement Services.

16

86.     During October 2017 through September of 2018, Modernize's "Frequently Asked Questions" webpage did not explain that it utilized automated telephone dialing technology "[i]f you request a quote by submitting your information" to "instantly match you with professional contractors in your area."

87.     During October 2017 through September of 2018, Modernize's internet-based disclosures on its website did not indicate that Modernize used lead-suppliers to obtain the telephone numbers that Modernize would thereafter call with an ATDS to deliver Modernize's Home Improvement Services.

88.     Modernize's internet-based disclosures at the time of the calls did not clearly or adequately disclose to Plaintiff that Modernize used lead-suppliers to obtain his cellular telephone number and that he would be called by one of  JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS with an ATDS to promote or provide Modernize's Home Improvement Services.

89.     Modernize's internet-based disclosures at the time of the calls did not clearly or adequately disclose to Plaintiff that Modernize used lead-suppliers to obtain his cellular telephone number and that he would be called by one of  JOHN DOE DEFENDANT LEAD-GENERATORS with an ATDS to promote Modernize's Home Improvement Services.

90.     Modernize's internet-based disclosures at the time of the calls did not clearly or adequately disclose to the putative class members that Modernize used lead-suppliers to obtain class members' cellular telephone numbers and that class members would be called by one of JOHN DOE DEFENDANT LEAD-GENERATORS with an ATDS to promote Modernize's Home Improvement Services.

91.     Modernize's internet-based disclosures at the time of the calls did not clearly or adequately disclose to the putative class members that Modernize used lead-suppliers to obtain

17

class members' cellular telephone numbers and that class members would be called by one of JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS with an ATDS to promote or provide Modernize's Home Improvement Services.

92.    Modernize's internet-based disclosures did not inform Plaintiff that if he provided his cellular number to one of Modernize's undisclosed affiliated websites to obtain a quote for a home improvement project, his cellular telephone would be called by Modernize using an ATDS to promote or provide Modernize's Home Improvement Services.

93.    Modernize's internet-based disclosures did not inform putative class members that if they provided their cellular number to one of Modernize's undisclosed affiliated websites to obtain a quote for a home improvement project, their cellular telephone would be called by Modernize using an ATDS to promote or provide Modernize's Home Improvement Services.

94.    Modernize's internet-based disclosures did not inform putative class members that if they provided their cellular number to one of Modernize's undisclosed affiliated websites to obtain a quote for a home improvement project, their cellular telephone would be called by one or more of JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS using an ATDS to promote or provide Modernize's Home Improvement Services.

95.    Modernize's internet-based disclosures did not inform putative class members that if they provided their cellular number to one of Modernize's undisclosed affiliated websites to obtain a quote for a home improvement project, their cellular telephone would be called by one or more of JOHN DOE DEFENDANT LEAD-GENERATORS using an ATDS to promote Modernize's Home Improvement Services.

96.    Modernize's internet-based disclosures did not explain to Plaintiff that by using one of Modernize's affiliated (but undisclosed) websites to obtain a quote for a home improvement

project, Plaintiff would be unable to stop Modernize from calling Plaintiff's cellular telephone number using an ATDS to promote or provide Modernize's Home Improvement Services.

97.     Modernize's internet-based disclosures did not explain to Plaintiff that by using one of Modernize's affiliated (but undisclosed) websites to obtain a quote for a home improvement project, Plaintiff would be unable to stop one or more of  JOHN DOE DEFENDANT LEAD-GENERATORS from calling Plaintiff's cellular telephone number using an ATDS to promote or provide Modernize's Home Improvement Services.

98.     Modernize's internet-based disclosures did not explain to Plaintiff that by using one of Modernize's affiliated (but undisclosed) websites to obtain a quote for a home improvement project, Plaintiff would be unable to stop one or more of  JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS from calling Plaintiff's cellular telephone number using an ATDS to promote or provide Modernize's Home Improvement Services.

99.     Modernize's internet-based disclosures did not disclose to putative class members that by using one of Modernize's affiliated (but undisclosed) websites to obtain a quote for a home improvement project, class members would be unable to stop Modernize from calling their cellular telephone numbers using an ATDS to deliver telemarketing messages promoting Modernize's Home Improvement Services.

100.     Modernize's internet-based disclosures did not disclose to putative class members that by using one of Modernize's affiliated (but undisclosed) websites to obtain a quote for a home improvement project, class members would be unable to stop one of  JOHN DOE DEFENDANT LEAD-GENERATORS from calling their cellular telephone numbers using an ATDS to promote Modernize's Home Improvement Services.

101.     Modernize's internet-based disclosures did not disclose to putative class members that by using one of Modernize's affiliated (but undisclosed) websites to obtain a quote for a home

improvement project, class members would be unable stop one of JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS from calling their cellular telephone numbers using an ATDS to promote or provide Modernize's Home Improvement Services.

102.    As a sophisticated home improvement referral based company, Modernize should know what is required of it under the TCPA.

**VII.    Modernize and the JOHN DOE DEFENDANTS Did Not Comply With "Do Not Call" or "Stop Calling" Requests**

103.    When a person no longer wants to receive any more Modernize's Home Improvement Services calls from Modernize, and a person says "stop calling me", Modernize does not have a system in place to stop Modernize from continuing to make ATDS based calls promoting Modernize's Home Improvement Services.

104.    Under Modernize's business model, if a person answered one of Modernize's Home Improvement Services calls and said "stop calling me", Modernize's ATDS based Home Improvement Services calls would continue unabated.

105.    When Plaintiff answered one of Modernize's Home Improvement Services calls and said "stop calling me", Modernize's ATDS based Home Improvement Services calls would continue unabated.

106.    Under Modernize's business model, Plaintiff was unable to prevent additional ATDS based Home Improvement Services calls from coming from *other* JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and JOHN DOE DEFENDANT LEAD-GENERATORS.

107.    As detailed below, when Plaintiff answered one of Modernize's Home Improvement Services calls from Modernize and told the person on the other end of the call to "stop calling me", Modernize did not have a system in place to stop additional Home Improvement Services calls placed by the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS.

108.    As detailed below, when Plaintiff answered one of Modernize's Home Improvement Services calls from Modernize and Plaintiff told the Person on the other end of the call to "stop calling me", Modernize did not have a system in place to stop additional Home Improvement Services calls placed by the JOHN DOE DEFENDANT LEAD-GENERATORS.

109.    As detailed below, when Plaintiff answered a Home Improvement Services call from one of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS, and Plaintiff told the person on the other end of the call to "stop calling me", Modernize did not have a system in place to stop continued Home Improvement Services calls from the *other* JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS.

110.    As detailed below, when Plaintiff answered a Home Improvement Services call from one of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS, and Plaintiff told the person on the other end of the call to "stop calling me", the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDER placing the call did not have a system in place to stop continued Home Improvement Services calls.

111.    As detailed below, when Plaintiff answered a Home Improvement Services call from one of the JOHN DOE DEFENDANT LEAD-GENERATORS, and Plaintiff told the person on the other end of the call to "stop calling me", Modernize did not have a system in place to stop continued Home Improvement Services calls from the *other* JOHN DOE DEFENDANT LEAD-GENERATORS.

112.    As detailed below, when Plaintiff answered a Home Improvement Services call from one of the JOHN DOE DEFENDANT LEAD-GENERATORS, and Plaintiff told the person on the other end of the call to "stop calling me", the JOHN DOE DEFENDANT LEAD-GENERATOR placing the call did not have a system in place to stop continued Home Improvement Services calls.

21

**A.  Violations of 47 CFR § 64.1200(d)(2)**

113.    47 CFR § 64.1200(d)(2) states that "[p]ersonnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list."

114.    Modernize violated 47 CFR § 64.1200(d)(2) when Modernize called Plaintiff's cellular telephone number to promote its Home Improvement Services, because Modernize did not train the personnel who spoke with Plaintiff to be informed and trained in the existence and use of the do-not-call list.

115.    The JOHN DOE DEFENDANTS violated 47 CFR § 64.1200(d)(2) when they called Plaintiff's cellular telephone number to promote Moderize's Home Improvement Services, because the JOHN DOE DEFENDANTS did not train the personnel who spoke with Plaintiff to be informed and trained in the existence and use of the do-not-call list.

**B.  Violations of 47 CFR § 64.1200(d)(3)**

116.    47 CFR § 64.1200(d)(3), in combination with 47 CFR § 64.1200(e) states that "[p]ersons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential [or cellular] subscriber's do-not-call request within a reasonable time from the date such request is made."

117.    Modernize violated 47 CFR § 64.1200(d)(3) when Modernize called Plaintiff's cellular telephone number to promote its Home Improvement Services, because Modernize and its employees do not record the telephone number requesting a do-not-call request on a do-not-call list at the time a do-not-call request is made.

118.    The JOHN DOE DEFENDANTS violated 47 CFR § 64.1200(d)(3) when they called Plaintiff's cellular telephone number to promote Modernize's Home Improvement Services, because the JOHN DOE DEFENDANTS do not honor do-not-call requests within a reasonable time from the date such request is made.

22

**C.**        **Violations of 47 CFR § 64.1200(d)(4)**

119.    47 CFR § 64.1200(d)(4) states that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number . . . at which the person or entity may be contacted."

120.    Modernize violated 47 CFR § 64.1200(d)(4) when Modernize called Plaintiff's cellular telephone number to promote its Home Improvement Services, because the persons that Plaintiff spoke with failed to provide Plaintiff with the name of the individual caller, the name of the entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

121.    The JOHN DOE DEFENDANTS violated 47 CFR § 64.1200(d)(4) when they called Plaintiff's cellular telephone number to promote Modernize's Home Improvement Services, because the persons that Plaintiff spoke with failed to provide Plaintiff with the name of the individual caller, the name of the entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

**D.**        **Violations of 47 CFR § 64.1200(d)(5)**

122.    47 CFR § 64.1200(d)(5) states that a "subscriber's do-not-call request shall apply to the particular business entity making the call [an shall also] apply to affiliated entities [where] the consumer reasonably would expect [affiliated entities] to be included given the identification of the caller and the product being advertised."

123.    Modernize violated 47 CFR § 64.1200(d)(5) because when Plaintiff answered a call placed by Modernize and told the person on the other end of the call to stop calling him, Plaintiff reasonably expected that his request would apply to stop all future Home Improvement Services calls by any and all JOHN DOE DEFENDANTS.

124.    One or more of the JOHN DOE DEFENDANTS violated 47 CFR § 64.1200(d)(5) because when Plaintiff answered a call placed by one or more of the JOHN DOE DEFENDANTS and told the persons on the other end of the call to stop calling him, Plaintiff reasonably expected that his request would apply to stop all future Home Improvement Services calls by Modernize and/or any and all JOHN DOE DEFENDANTS.

**E.        47 CFR § 64.1200(d)(6)**

125.    47 CFR § 64.1200(d)(6) states that "[a] person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

126.    Modernize violated 47 CFR § 64.1200(d)(6) when Modernize called Plaintiff's cellular telephone number to promote its Home Improvement Services, because after Plaintiff told Modernize to stop calling him, Modernize appears to have failed to maintain a record of Plaintiff's request not to receive further telemarketing calls.

127.    Further, Modernize violated 47 CFR § 64.1200(d)(6) when Modernize continued to call Plaintiff's cellular telephone number to promote its Home Improvement Service after Plaintiff told Modernize to stop calling him.

128.    One or more of the JOHN DOE DEFENDANTS violated 47 CFR § 64.1200(d)(6) when it/they called Plaintiff's cellular telephone to promote Modernize's Home Improvement Services, because after Plaintiff requested it/them to stop calling him, one or more of the JOHN DOE DEFENDANTS appears to have failed to maintain a record of Plaintiff's request not to receive further telemarketing calls.

129.    Further, one or more of the JOHN DOE DEFENDANTS violated 47 CFR § 64.1200(d)(6) when it/they continued to call Plaintiff's cellular telephone number to promote Modernize's Home Improvement Service after Plaintiff told it/them to stop calling him.

130.    The JOHN DOE DEFENDANTS violated 47 CFR § 64.1200(d)(6) when the JOHN DOE DEFENDANTS called Plaintiff's cellular telephone number to promote Modernize's Home Improvement Services, because Plaintiff's do-not-call request was not honored after his request was made.

## VIII.   Summary of Telephone Calls Placed By or on Behalf of Modernize

131.    Modernize called Plaintiff's cellular telephone number on numerous occasions to promote its Home Improvement Service.

132.    Modernize never obtained Plaintiff's express permission to call Plaintiff's cellular telephone number with an ATDS before Modernize called his cellular number.

133.    Alternatively, to the extent Modernize contends that it had obtained Plaintiff's consent to call him with an ATDS, Plaintiff explicitly revoked any consent purportedly provided when he answered a Home Improvement Services call placed by Modernize and/or one of the JOHN DOE DEFENDANTS, spoke with a live person and he told that person to stop calling him.

134.    Alternatively, with Modernize's knowledge or approval, one or more of the JOHN DOE DEFENDANTS called Plaintiff's cellular telephone number on numerous occasions to promote Modernize's Home Improvement Services.

135.    The JOHN DOE DEFENDANTS never obtained Plaintiff's express permission to call Plaintiff's cellular telephone number with an ATDS before they called his cellular number.

136.    Alternatively, to the extent Modernize and/or the JOHN DOE DEFENDANTS

contend that they had obtained Plaintiff's consent to call him with an ATDS, Plaintiff explicitly revoked any consent purportedly provided when he answered a Home Improvement Services call, spoke with alive  person and he told that person to stop calling him or that he did not want to be called with an automated dialer.

137.    The subject calls violated the TCPA because the Home Improvement Service calls continued after Plaintiff told the person that he spoke with to not call him with an autodialer.

138.    Alternatively, the subject calls violated the TCPA because the Home Improvement Service calls continued after Plaintiff told the person that he spoke with to only call him with manual dialed calls.

**A.      Calls on October 28, 2017**

139.    On October 28, 2017, at approximately 2:25 p.m. Mountain Time[2], Modernize called Plaintiff's cellular telephone number with an ATDS.

140.    These calls were made to promote Modernize's Home Improvement Services.

141.    Modernize called Plaintiff with an ATDS on the above date and time without having first obtained Plaintiff's prior express written consent.

142.    Modernize plausibly utilized an ATDS to call Plaintiff because when Plaintiff answered the above telephone call, he had to say "hello" multiple times before hearing a beeping sound followed by a person introducing himself as "James Barker."

143.    Modernize plausibly utilized an ATDS to call Plaintiff because this call was abruptly disconnected due to network issues with the dialing system used to initiate the call.

144.    Modernize plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number on October 28, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

_____

[2] All calls listed in this Complaint are listed according to Mountain Standard Time.

145.    Alternatively, Modernize plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers) on October 28, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

146.    Mr. Barker indicated that he was calling on behalf of "Home Owner Services."

147.    On information and belief, it is plausible that Home Owner Services is a fictitious named, used to protect Modernize from being found liable for unsolicited telemarketing calls.

148.    During this call, Mr. Barker told Plaintiff - "Contractors will give you a call in the next 24-48 hours" to provide a "free home improvement estimate".

149.    In response, Plaintiff told Mr. Barker that he did not want to be called with an "autodialer" or words to that effect which conveyed to "Mr. Barker" that Plaintiff only wanted to be called by a manually initialed telephone call.

150.    On October 28, 2017 at 2:30 p.m., approximately a few minutes after Plaintiff's call with Mr. Barker ended, Modernize called Plaintiff from the same (310) number to promote its Home Improvement Services.

151.    310 is a Los Angeles based area code.

152.    Upon answering this call, Plaintiff spoke with "Jason" who claimed to be "one of the supervisors" of the previously described fictitious business name of Home Owner Services.

153.    This call was placed with an ATDS, because the call was placed a few minutes after the prior call was placed, and just like the prior call, there was a pause before the person on the other end of the call spoke with Plaintiff.

154.    On information and belief, it is plausible that this call was placed with an ATDS, because the supervisor "Jason" told Plaintiff that the previous call had been disconnected "due to network issues".

155. During this call, Plaintiff told "Jason" that he did not want to be called with an "autodialer", or words to that effect.

156. On October 28, 2017 at approximately 5:40 p.m., Plaintiff received a third autodialed call from a telemarketer claiming to be a "Modernize project assistant", from a telephone number originating from a (602) area code, an Arizona based area code.

157. This call was placed to promote Modernize's Home Improvement Services.

158. This call was placed with an ATDS because after Plaintiff answered this call, there was nearly a 10 second moment of dead air and Plaintiff had to say "hello" three times before a person responded.

159. During this October 28, 2017, call, the person on the call told Plaintiff that he was going to set him up to get a "free estimate."

160. This call was placed to promote Modernize's Home Improvement Services.

161. Plaintiff told the person that he spoke with not to call back.

162. At approximately 5:45 p.m. on October 28, 2017, Plaintiff received a fourth autodialed call from a telemarketer claiming to be a "Modernize project assistant" from the same (602) area code number that called him at 5:40 p.m.

163. This call was placed to promote Modernize's Home Improvement Services.

164. This call was made with an ATDS because after Plaintiff answered, there was a pause and Plaintiff had to ask "hello?" twice before a person responded.

165. The person on the other end of the call began to read from a scripted telemarketing pitch and told Plaintiff to "be on the lookout for contractors calling."

166. Plaintiff responded by saying "do not call me back" or similar words.

167. The unknown person replied "okay."

28

168.    Less than one minute after disconnecting this call, Plaintiff received another autodialed call from a telemarketer claiming to be a "Modernize project assistant" from the same (602) number as before.

169.    As noted above, 602 is an Arizona based area code.

170.    This call was placed for promoting Home Improvement Services.

171.    This call was placed with an ATDS because when Plaintiff answered the phone, he asked "hello?" two times, there was at least a five second pause before a person came on the line and started to read the same scripted telemarketing pitch as reflected in Paragraph 162.

172.    Modernize plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number on October 28, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

173.    Alternatively, Modernize plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers) on October 28, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

174.    Further, it is also plausible that an ATDS was used based upon the frequency and persistence of the above described calls on October 28, 2017.

**B.      Calls on October 29, 2017**

175.    On October 29, 2017, Modernize called Plaintiff's cellular number several times with an ATDS.

176.    The October 29, 2017, calls were placed to promote Modernize's Home Improvement Services.

177.    The calls placed by Modernize on October 29, 2017, were made with an ATDS because during each of the calls Plaintiff had to ask "hello" a few times before a live person would appear on the other end of the call.

29

178.    Additionally, some of the calls were placed by persons claiming to be "Modernize project assistants", using the same (602) area code number as note above.

179.    During one of these calls, Plaintiff told the other person, said "Don't call me back, I'll give you guys a call back" or similar words.

180.    The person that Plaintiff spoke with heard and understood Plaintiff because the person responded by saying "Alright. Okay."

181.    Modernize plausibly utilized an ATDS to call Plaintiff because the calls from the (602) area code number noted above were again made back-to-back, within minutes of each other, just like on the previous day.

182.    Alternatively, Modernize plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number on October 29, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

183.    Alternatively, Modernize plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers) on October 29, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

184.    It is also plausible that an ATDS was used based upon the frequency and persistence of the above described calls on October 29, 2017.

**C.      Calls on October 30, 2017**

185.    On October 30, 2017, Modernize called Plaintiff several times with an ATDS.

186.    The October 30, 2017, calls were placed to promote Modernize's Home Improvement Services.

187.    The October 30, 2017, calls were made with an ATDS because during each of these calls, Plaintiff had to ask "hello?" at least twice before a person responded and there would be several seconds of dead air before a person began speaking.

188.    Plaintiff received two back-to-back home improvement pitches around 10:30 a.m. These calls were associated with (480) area codes, purportedly originating in Arizona.

189.    On October 30, 2017, at approximately 12:15 p.m., Modernize called Plaintiff from a (310) area code.  Upon answering this call, there was a five-second pause and Plaintiff had to say "hello" twice before hearing a beeping sound followed by a person introducing himself as "Van Cooper."

190.    On information and belief, Van Cooper indicated that he was calling on behalf a fictitious business called "Home Improvement Services" when in fact he was calling on behalf of Modernize.

191.    On October 30, 2017, at approximately 4:05 p.m., Plaintiff received another call from Modernize from the same (877) number. Plaintiff terminated this call.

192.    Modernize plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number on October 30, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

193.    Alternatively, Modernize plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers) on October 30, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

194.    It is also plausible that an ATDS was used based upon the frequency and persistence of the above described calls on October 30, 2017.

**D.    Calls on October 31, 2017**

195.    On October 31, 2017, Modernize called Plaintiff with an ATDS at approximately 8:30 a.m. using an (877) area code number.

196.    This call was placed to promote Modernize's Home Improvement Services.

197.    This call was placed with an ATDS because upon answering this call, Plaintiff was greeted with a five-second pause during which Plaintiff had to ask "hello?" twice before a person answered and started speaking to Plaintiff.

198.    Plaintiff told the person on other end of the call to "take me off your calling list" or similar words.

199.    On October 31, 2017 at approximately 12:00 p.m. Plaintiff received a second call from Modernize from a (480) area code, which is an Arizona based area code.

200.    The October 31, 2017, calls were placed to promote Modernize's Home Improvement Services.

201.    Upon answering, there was a three-second pause during which Plaintiff had to say "hello" twice before a person answered and started speaking to Plaintiff.

202.    During this call, Modernize said that it was calling Plaintiff based upon a lead source.

203.    Plaintiff replied by saying that he did not need the offered services and specifically said "please don't call this number back..." to which the person replied "Alright".

204.    Modernize plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number on October 31, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

205.    Alternatively, Modernize plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers) on October 31, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

206.    It is also plausible that an ATDS was used based upon the frequency and persistence of the above described calls on October 31, 2017.

**E.    Calls on November 2, 2017**

32

207.    On November 2, 2017, Modernize called Plaintiff *multiple* times from area codes 480, 925 and 602 with an ATDS.

208.    These calls were made to promote Modernize's Home Improvement Services.

209.    At approximately 12:50 p.m. on November 2, 2017, Modernize called Plaintiff from a (602) area code with an ATDS.

210.    This call was placed with an ATDS because Plaintiff was repeatedly greeted with dead air and had to say "hello?" multiple times before a live person answered the phone call and spoke with him.

211.    During this call, Plaintiff was pitched a home improvement project to which Plaintiff replied, "please don't call me back, okay?" to which the agent replied, "Okay."

212.    Modernize plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number on November 2, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

213.    Alternatively, Modernize plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers) on November 2, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

214.    It is plausible that an ATDS was used based upon the frequency and persistence of Modernize's calls on November 2, 2017.

**F.    Calls on November 3, 2017**

215.    Despite asking to not receive any further calls, during the morning hours of November 3, 2017, Modernize called Plaintiff several times with an ATDS to promote its Home Improvement Services.

33

216.    Plaintiff believes that the calls made by an ATDS based upon the fact that Plaintiff was met with a brief pause and he had to asked "hello?" two or three times before he spoke with a person.

217.    During the first call, Plaintiff said, "don't call this number back."

218.    Modernize did not comply Plaintiff's request to stop calling him because Modernize called him minutes later and from the same (602) area code number.

219.    Again, this call was made with an ATDS because upon answering this call, there was a six-second pause and Plaintiff had to say "hello" three times before a live person responded.

220.    Modernize plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number on November 3, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

221.    Alternatively, Modernize plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers) on November 3, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

222.    It is also plausible that an ATDS was used based upon the frequency and persistence of the above described calls on November 3, 2017.

**G.    Call on November 28, 2017**

223.    On November 28, 2017, Modernize called Plaintiff several times with an ATDS to promote its Home Improvement Services.

224.    Plaintiff received at least two, back-to-back ATDS based placed calls, approximately one minute apart, by a person claiming to be a "Modernize project assistant" and calling from another (602) area code number.

225.    Modernize plausibly utilized an ATDS when placing the calls on November 28, 2017, because upon answering both of these calls, there was a pause and Plaintiff had to say "hello" multiple times.

226.    Modernize plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number on November 28, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

227.    Alternatively, Modernize plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers) on November 28, 2017, because Plaintiff did not provide Modernize with his cellular telephone number prior to this call being placed.

228.    It is also plausible that an ATDS was used based upon the frequency and persistence of the above described calls on November 28, 2017.

**H.    Calls Between March, 2018, and September, 2018**

229.    Modernize called Plaintiff several times with an ATDS between March of 2018 and September of 2018, where the calls promoted Modernize's Home Improvement Services.

230.    Thee calls came from a series of reoccurring (but unknown) telephone numbers from a Los Angeles based area code (310).

231.    Modernize called Plaintiff with an ATDS between March of 2018 and September of 2018, because the calls almost always contained a few seconds dead air while Plaintiff repeatedly asked "hello?" and before Plaintiff heard an audible "click" or increase of background volume after which a live person attempted to speak with Plaintiff.

232.    Plaintiff also received numerous dropped calls from the same Los Angeles based telephone number between March 2018, and September 2018, which plausibly demonstrates that the calls were placed and/or made by Modernize with an ATDS.

35

233.    Modernize plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number between March 2018, and September 2018, because Plaintiff did not provide Modernize with his cellular telephone number prior to the calls being placed.

234.    Alternatively, Modernize plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers) between March 2018, and September 2018, because Plaintiff did not provide Modernize with his cellular telephone number prior to the calls being placed.

235.    It is also plausible that an ATDS was used based upon the frequency and persistence of the Home Improvement Services calls that were placed by Modernize between March 2018, and September 2018.

236.    The calls that were placed by Modernize or on Modernize's behalf between March 2018, and September 2018, were placed to promote Modernize's Home Improvement Services.

## IX.    Vicarious Liability

237.    As a "seller" of "telemarketing" and "unsolicited advertisements", Modernize can be vicariously liable for utilizing third-parties to place the calls at issue.

238.    "Absent a clear expression of Congressional intent to apply another standard, the Court must presume that Congress intended to apply the traditional standards of vicarious liability with which it is presumed to be familiar, including the alter ego and agency doctrines." *Thomas v. Taco Bell Corp.*, 879 F. Supp.2d 1079, 1084 (C.D. Cal. 2012).

239.    On May 9, 2013, the FCC issued a Declaratory Ruling which stated that a creditor or seller of services can be liable under the TCPA for calls placed on its behalf:

> we clarify that while a seller does not generally "initiate" calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are

1    committed by third-party telemarketers.[3]

2    240.    Vicarious liability and agency principles apply under the TCPA to hold a party

3    responsible and liable for TCPA violations committed by a third-party vendor. For example,

4    in *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), the plaintiff alleged that the

5    defendant, Campbell-Ewald Company ("Campbell"), had instructed or allowed a third-party

6    vendor to send unsolicited text messages on behalf of the United States Navy –- with whom

7    Campbell-Ewald had a marketing contract. *Gomez*, 768 F.3d at 873. Campbell argued that it could

8    not be held liable for the alleged TCPA violations since it had outsourced the dialing and did not

9    actually make any calls on behalf of its client. *Id.* at 877. The Ninth Circuit rejected this argument

10    and ruled that the TCPA allowed for vicarious liability. *Id.* at 878-79 (a "defendant may be held

11    vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as

12    defined by federal common law, between the defendant and a third-party caller.").

13    241.    To the extent that Modernize's agents violated the TCPA, their conduct can be

14    imputed to Modernize because when the JOHN DOE DEFENDANTS placed or initiated the calls

15    in question, they did so on behalf of and for the benefit of Modernize.

16    242.    Evidence in other litigation plausibly demonstrates that Modernize is vicariously

17    liable for any violations of the TCPA caused by the JOHN DOE DEFENDANTS.

18    243.    Modernize is vicariously liable for any violations of the TCPA caused by the JOHN

19    DOE DEFENDANTS because, on information and belief, Modernize authorized the JOHN DOE

20    DEFENDANTS to place the Home Improvement Services calls in question.

_____

[3] The 2013 FCC Order is hosted at https://apps.fcc.gov/edocs_public/attachmatch/FCC-13-54A1_Rcd.pdf

37

244.    Modernize is vicariously liable for any violations of the TCPA caused by the JOHN DOE DEFENDANTS because, on information and belief, Modernize instructed the JOHN DOE DEFENDANTS to place the Home Improvement Services calls in question.

245.    Modernize is vicariously liable for any violations of the TCPA caused by the JOHN DOE DEFENDANTS because, on information and belief, Modernize received data from the JOHN DOE DEFENDANTS reflecting the Home Improvement Services calls in question.

246.    Modernize is vicariously liable for any violations of the TCPA caused by the JOHN DOE DEFENDANTS because, on information and belief, Modernize paid the JOHN DOE DEFENDANTS to make the Home Improvement Services calls in question.

247.    Modernize is vicariously liable for any violations of the TCPA caused by the JOHN DOE DEFENDANTS because, on information and belief, Modernize intended to compensate the JOHN DOE DEFENDANTS if a person receiving Home Improvement Services calls resulted in a person signing up for the promoted service(s).

248.    Modernize is vicariously liable for any violations of the TCPA caused by the JOHN DOE DEFENDANTS making the of Home Improvement Services calls in question by virtue of the fact that Modernize knew of, monitored, and received periodic reports of the calls placed by the JOHN DOE DEFENDANTS.

249.    Modernize is vicariously liable for any violations of the TCPA caused by the JOHN DOE DEFENDANTS making the of Home Improvement Services calls in question by virtue of the fact that Modernize directed the JOHN DOE DEFENDANTS to place the calls in question.

250.    Modernize is vicariously liable for any violations of the TCPA caused by the JOHN DOE DEFENDANTS making the of Home Improvement Services calls in question by virtue of the fact that Modernize ratified the calls in question by virtue of it entering into contracts and not terminating contracts with the JOHN DOE DEFENDANTS.

1

## X.    Causes of Action

2

3

**Count I - Individual Cause of Action for Violating § 227(b)(1)(A)(iii) of the TCPA**

4

251.    Plaintiff incorporates the above paragraphs as if fully set forth above.

5

252.    Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful to use an "automatic

6

telephone dialing system" or an "artificial or prerecorded voice" to call a person's cellular telephone

7

number "with[out] the prior express consent of the called party."

8

253.    Plaintiff never provided "prior express written consent" to Modernize to allow or

9

otherwise authorize it to call his cellular number with an "automatic telephone dialing system or an

10

artificial or prerecorded voice."

11

12

254.    Plaintiff never signed any document that contained any of the requirements set forth

13

by 47 CFR § 64.1200(f)(8).

14

255.    Modernize's calls to Plaintiff's cellular telephone number were telemarketing

15

messages as defined by 47 CFR § 64.1200(f)(12) because Modernize called Plaintiff for the purpose

16

of encouraging him to purchase Modernize's Home Improvement Services.

17

256.    Without Plaintiff's prior express invitation or permission, Modernize called

18

Plaintiff's cellular number with a "automatic telephone dialing system" or "autodialer" for the

19

purpose delivering a "telephone solicitation" and an "unsolicited advertisement" as these terms

20

defined by 47 CFR § 64.1200(f)(2), (14) and (15).

21

22

257.    Plaintiff never gave Modernize permission to call him with an ATDS.

23

258.    Plaintiff never gave any of the JOHN DOE DEFENDANTS permission to call him

24

with an ATDS.

25

259.    Modernize called Plaintiff's cellular number with an ATDS because the calls placed

26

by Modernize resulted in dead air and long, unanswered pauses before a human would respond to

27

Plaintiff's repeated "hello?" requests.

28

39

260. Modernize utilized an ATDS to randomly dial Plaintiff's cellular telephone number, because Plaintiff did not provide Modernize with his cellular telephone number prior to any calls being placed by Modernize.

261. Modernize used an ATDS to call Plaintiff's cellular telephone number because on information and belief, the telephone equipment that Modernize used was able to automatically dial phone numbers from a stored list (in a random or sequential manner), and Modernize called Plaintiff in this manner.

262. Additionally, Modernize utilized an ATDS to randomly or sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers), because Plaintiff did not provide Modernize with his cellular telephone number with an ATDS prior to any calls being placed by Modernize.

263. It is also plausible that an ATDS was used based upon the frequency and persistence of the above described calls.

264. If Modernize contends that it did not place the calls in questions, one or more of the JOHN DOE DEFENDANTS plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number, because Plaintiff did not provide Modernize with his cellular telephone number prior to any calls being placed by Modernize.

265. If Modernize contends that it did not place the calls in questions, one or more of the JOHN DOE DEFENDANTS plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers), because Plaintiff did not provide Modernize or any of the JOHN DOE DEFENDANTS with his cellular telephone number prior to any calls being placed by Modernize.

266. One or more of the JOHN DOE DEFENDANTS used an ATDS to call Plaintiff's cellular telephone number because on information and belief, the telephone equipment that the

40

JOHN DOE DEFENDANTS used was able to automatically dial phone numbers from a stored list (in a random or sequential manner), and one or more of the JOHN DOE DEFENDANTS called Plaintiff in this manner.

267.    If Modernize contends that it did not place the calls in questions, Modernize is vicariously liable for any violations of the TCPA caused by one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS for one or more of the reason set forth in Section IX.

268.    As a result of these violations, Plaintiff is entitled to at least $500 per violation and up to $1,500 per violation as provided by 42 U.S.C. § 227(b)(3)(B)-(C).

WHEREFORE, Plaintiff is entitled to the following relief:

    a.   Declare that the telephone calls placed by Modernize to Plaintiff's cellular telephone number violated the TCPA;

    b.   Declare that the telephone calls placed to Plaintiff's cellular telephone number by the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS violated the TCPA;

    c.   Declare that Modernize is vicariously liable for TCPA violations caused by the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS;

    d.   Award Plaintiff statutory damages of at least $500;

    e.   Award Plaintiff statutory damages of $1,500 for each violation after Plaintiff told one or more of the Defendants to stop calling him; and

    f.   Enjoin Modernize from future violations of the TCPA.

**Count II – Arizona Based Class Action For Violating § 227(b)(1)(A)(iii)**

269.    Plaintiff incorporates the above paragraphs as if fully set forth above.

270.    Consistent with the types of calls received by Plaintiff, including the frequency and manner in which the calls were received by Plaintiff, Modernize and/or one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS called at least forty (40) cellular phone subscribers in the in the State of

Arizona with an ATDS, as defined by the TCPA, for the purpose of encouraging Plaintiff to purchase Modernize's Home Improvement Services, and did so without the consent of the persons called.

271.    Plaintiff seeks relief on behalf of all similar situated residents of the State of Arizona[4] who can be defined as follows:

    a.   all residents of the State of Arizona who were called on their cellular phones within the last four years by Modernize where Modernize placed the calls using an ATDS and Modernize did not have the express prior consent of the recipient as required by the TCPA;

    b.   all residents of the State of Arizona who were called on their cellular phones within the last four years by Modernize where Modernize placed the calls using an ATDS after Modernize no longer had express prior consent of the recipient as required by the TCPA because the recipient of a call told Modernize to stop calling and Modernize continued to call with an ATDS;

    c.   all residents of the State of Arizona who were called on their cellular phones within the last four years by one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS using an ATDS without the express prior consent of the recipient as required by the TCPA;

    d.   all residents of the State of Arizona who were called on their cellular phones within the last four years by one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS using an ATDS without the express prior consent of the recipient as required by the TCPA and the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS continued to call with an ATDS after being told to stop calling by the recipient;

    e.   all residents of the State of Arizona who were called on their cellular phones within the last four years by one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS using an ATDS without the express prior consent of the recipient as required by the TCPA; and

    f.   all residents of the State of Arizona who were called on their cellular phones within the last four years by one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS using an ATDS without the express prior consent of the recipient as required by the TCPA and the JOHN DOE DEFENDANT LEAD-GENERATORS continued to call with an ATDS after being told to stop calling by the recipient.

---

[4] The class members can be defined by having Arizona based cellular numbers and/or Arizona based residential addresses during the time of the calls in question.

272.    A defendant in a TCPA action bears the burden of demonstrating consent.

273.    It is Modernize's burden and obligation to exclude from these proposed classes people who consented to the calls and messages in question.

274.    Excluded from the proposed classes identified above are any persons who were class members in the case of *Hopkins v. Modernize*, 17-cv-40087 (D. Mass) as defined by the defined terms and described release of claims set forth the operative Settlement Agreement in *Hopkins v. Modernize*, 17-cv-40087 (D. Mass), Dkt. 85-1.

WHEREFORE, Plaintiff and similarly situated putative class members are entitled to the following relief:

a.  Declare that the telephone calls placed by Modernize to residents of the State of Arizona violated the TCPA;

b.  Declare that the telephone calls placed by the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS to residents of the State of Arizona violated the TCPA;

c.  Declare that Modernize is vicariously liable for TCPA violations caused by the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS for calls placed to residents of the State of Arizona;

d.  Award statutory damages of at least $500;

e.  Award statutory damages of $1,500 for each violation where there were calls placed after recipients told one or more of the Defendants to stop calling; and

f.  Enjoin Modernize from future violations of the TCPA.

**Count III – Nationwide Class Action Claims For Violating § 227(b)(1)(A)(iii)**

275.    Plaintiff incorporates the above paragraphs as if fully set forth above.

276.    Consistent with the types of calls received by Plaintiff, including the frequency and manner in which the calls were received by Plaintiff, Modernize and/or one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS called at least forty (40) cellular phone subscribers in the United States

43

with an ATDS, as defined by the TCPA, for the purpose of encouraging Plaintiff to purchase of

Modernize's Home Improvement Services, and did so without the consent of the persons called.

277.    Plaintiff seeks nationwide relief on behalf of all similar situated persons in the

United States who can be defined as follows:

a.  all persons in the United States with United States based telephone
numbers who were called on their cellular phones within the last four
years by Modernize where Modernize placed the calls using an ATDS
and Modernize did not have the express prior consent of the recipient as
required by the TCPA;

b.  all persons in the United States with United States based telephone
numbers who were called on their cellular phones within the last four
years by Modernize where Modernize placed the calls using an ATDS
*after* Modernize was told to stop calling and/or the recipient of the call
had otherwise revoked consent;

c.  all persons in the United States with United States base telephone
numbers who were called on their cellular phones within the last four
years by one or more of the JOHN DOE DEFENDANT HOME
IMPROVEMENT PROVIDERS, where the calls were placed using an
ATDS without the express prior consent of the recipient as required by
the TCPA;

d.  all persons in the United States with United States based telephone
numbers who were called on their cellular phones within the last four
years by one of the JOHN DOE DEFENDANT HOME
IMPROVEMENT PROVIDERS *after* the DEFENDANT HOME
IMPROVEMENT PROVIDER was told to stop calling and/or the
recipient of the call had otherwise revoked consent;

e.  all persons in the United States with United States base telephone
numbers who were called on their cellular phones within the last four
years by one or more of the JOHN DOE DEFENDANT LEAD-
GENERATORS, where the calls were placed using an ATDS without
the express prior consent of the recipient as required by the TCPA; and

f.  all persons in the United States with United States based telephone
numbers who were called on their cellular phones within the last four
years by one of the JOHN DOE DEFENDANT LEAD-GENERATORS
*after* the DEFENDANT LEAD-GENERATOR was told to stop calling.

278.    A defendant in a TCPA action bears the burden of demonstrating consent.

279.    Accordingly, it is Defendants' burden and obligation to exclude from these proposed classes people who consented to the calls and messages in question.

280.    Excluded from the proposed classes identified above are any persons who were class members in the case of *Hopkins v. Modernize*, 17-cv-40087 (D. Mass) as defined by the defined terms and described release of claims set forth the operative Settlement Agreement in *Hopkins v. Modernize*, 17-cv-40087 (D. Mass), Dkt. 85-1.

WHEREFORE, Plaintiff and similarly situated putative class members are entitled to the following relief:

a.  Declare that the telephone calls placed by Modernize violated the TCPA;

b.  Declare that any telephone calls placed by the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS violated the TCPA;

c.  Declare that Modernize is vicariously liable for any TCPA violations caused by the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS;

d.  Statutory damages of at least $500;

e.  $1,500 for each violation where there calls placed after recipients told one or more of the Defendants to stop calling; and

f.  Enjoin future violations of the TCPA.

**Count IV - Individual Claim For Violating the TCPA's "Do Not Call" Prohibitions**

281.    Plaintiff incorporates the above paragraphs as if fully set forth above.

282.    As set forth above, Modernize violated 47 CFR 64.1200(d)(2) through (d)6) when it called Plaintiff with an ATDS to promote its Home Improvement Services.

283.    Modernize violated Section 227(c)(5) of the TCPA by repeatedly calling Plaintiff in violation of the requirements of 47 CFR 64.1200(d)(3).

284.    As a result of these violations, Plaintiff is entitled to at least $500 per violation as provided by 42 U.S.C. § 227(c)(5)(B).

45

285.    As a result of these violations, Plaintiff is entitled $1,500 per violation as provided by 42 U.S.C. § 227(c)(5)(C).

WHEREFORE, Plaintiff is entitled to the following relief:

    a.    Declare that Modernize violated 47 CFR 64.1200(d)(2) through (d)6);

    b.    Declare that the telephone calls placed by  JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS violated 47 CFR 64.1200(d)(2) through (d)6);

    c.    Declare that Modernize is vicariously liable for TCPA violations caused by the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS;

    d.    Award statutory damages of at least $500;

    e.    Award statutory damages of $1,500 for each violation after Plaintiff told one or more of the Defendants to stop calling him; and

    f.    Enjoin Modernize from future violations of the TCPA.

### Count V –Arizona Based Class Action

### For Violations of the TCPA's "Do Not Call" Prohibitions

286.    Plaintiff incorporates the above paragraphs as if fully set forth above.

287.    On information and belief, at least forty (40) phone subscribers in the State of Arizona were called in violation of the TCPA's do-not-call list prohibition as set forth in Section 227(c)(5) of the TCPA.

288.    As set forth above, Modernize violated 47 CFR 64.1200(d)(2) through (d)6) when it called the putative class with an ATDS to promote its Home Improvement Services.

289.    Modernize violated Section 227(c)(5) of the TCPA by repeatedly calling putative class members in violation of the requirements of 47 CFR 64.1200(d)(3) after these persons told Modernize and/or its agents to stop calling them.

290.    A defendant in a TCPA action bears the burden of demonstrating consent.

291.   It is Defendants' burden and obligation to exclude from these proposed classes people who consented to the calls and messages in question.

292.   Excluded from the proposed classes identified above are any persons who were class members in the case of *Hopkins v. Modernize*, 17-cv-40087 (D. Mass) as defined by the defined terms and described release of claims set forth the operative Settlement Agreement in *Hopkins v. Modernize*, 17-cv-40087 (D. Mass), Dkt. 85-1.

293.   Plaintiff seeks relief on behalf of all similar situated residents of the State of Arizona[5] who can be defined as follows:

   a.   all residents of the State of Arizona who were called on their cellular phones within the last four years by Modernize where Modernize placed the calls using an ATDS, Modernize did not have the express prior consent of the recipient as required by the TCPA, and the class member was listed on the Federal Do Not Call list;

   b.   all residents of the State of Arizona who were called on their cellular phones within the last four years by Modernize where Modernize placed the calls using an ATDS, Modernize did not have the express prior consent of the recipient as required by the TCPA, class members told Modernize to stop calling and Modernize continued to call the person *after* the person told Modernize to stop calling;

   c.   all residents of the State of Arizona who were called on their cellular phones within the last four years by one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS, where the calls were placed using an ATDS, without the express prior consent of the recipient as required by the TCPA, and the class member was listed on the Federal Do Not Call list;

   d.   all residents of the State of Arizona who were called on their cellular phones within the last four years by one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS, where the calls were placed using an ATDS, without the express prior consent of the recipient as required by the TCPA, class members told one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS, to stop calling and one or more of the JOHN DOE

---

[5] The class members can be defined by having Arizona based cellular numbers and/or Arizona based residential addresses during the time of the calls in question.

DEFENDANT HOME IMPROVEMENT PROVIDERS continued to call the class members;

e.  all residents of the State of Arizona who were called on their cellular phones within the last four years by one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS, where the calls were placed using an ATDS, without the express prior consent of the recipient as required by the TCPA, and the class member was listed on the Federal Do Not Call list; and

f.  all residents of the State of Arizona who were called on their cellular phones within the last four years by one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS, where the calls were placed using an ATDS, without the express prior consent of the recipient as required by the TCPA, class members told one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS, to stop calling and one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS continued to call the class members.

WHEREFORE, Plaintiff and similarly situated putative class members are entitled to the following relief:

a.  Declaring that the telephone calls placed by Modernize violated the TCPA's do-not-call prohibitions;

b.  Declaring that any telephone calls placed by the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS violated the TCPA's do-not-call prohibitions;

c.  Declaring that Modernize is vicariously liable for TCPA violations caused by the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS in violation of the TCPA's do-not-call prohibitions;

d.  Statutory damages of at least $500;

e.  $1,500 for each violation where there calls were placed after recipients told one or more of the Defendants to stop calling; and

f.  Injunctive relief to prohibit future violations of the TCPA.

**Count VI – Nationwide Class Action**

**For Violations of the TCPA's "Do Not Call" Prohibitions**

294.  Plaintiff incorporates the above paragraphs as if fully set forth above.

295.    At least forty (40) phone subscribers in the United States were called in violation of the TCPA's do-not-call prohibitions set forth in 47 CFR 64.1200(d) and Section 227(c)(5) of the TCPA.

296.    As set forth above, Modernize violated 47 CFR 64.1200(d)(2) through (d)6) when it called the putative class with an ATDS to promote its Home Improvement Services.

297.    Modernize violated Section 227(c)(5) of the TCPA by repeatedly calling putative class members in violation of the requirements of 47 CFR 64.1200(d)(3) after these persons told Modernize and/or its agents to stop calling them.

298.    A defendant in a TCPA action bears the burden of demonstrating consent.

299.    Accordingly, it is Defendants' burden and obligation to exclude from these proposed classes people who consented to the calls and messages in question.

300.    Excluded from the proposed classes identified above are any persons who were class members in the case of *Hopkins v. Modernize*, 17-cv-40087 (D. Mass) as defined by the defined terms and described release of claims set forth the operative Settlement Agreement in *Hopkins v. Modernize*, 17-cv-40087 (D. Mass), Dkt. 85-1.

301.    Plaintiff seeks nationwide relief on behalf of all similar situated persons who can be defined as follows:

    a.  all persons in the United States who were called on their cellular phones within the last four years by Modernize where Modernize placed the calls using an ATDS, Modernize did not have the express prior consent of the recipient as required by the TCPA, and the class member was listed on the Federal Do Not Call list;

    b.  all persons in the United States who were called on their cellular phones within the last four years by Modernize where Modernize placed the calls using an ATDS, Modernize did not have the express prior consent of the recipient as required by the TCPA, the class member was listed on the Federal Do Not Call list, and Modernize continued to call the person *after* the person told Modernize to stop calling;

c. all persons in the United States who were called on their cellular phones within the last four years by one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS, where the calls were placed using an ATDS, without the express prior consent of the recipient as required by the TCPA, and the class member was listed on the Federal Do Not Call list;

d. all persons in the United States who were called on their cellular phones within the last four years by one or more of the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS, where the calls were placed using an ATDS, without the express prior consent of the recipient as required by the TCPA, the class member was listed on the Federal Do Not Call list; and the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDER(S) continued to call the person *after* being told to stop calling;

e. all persons in the United States who were called on their cellular phones within the last four years by one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS, where the calls were placed using an ATDS, without the express prior consent of the recipient as required by the TCPA, and the class member was listed on the Federal Do Not Call list; and

f. all persons in the United States who were called on their cellular phones within the last four years by one or more of the JOHN DOE DEFENDANT LEAD-GENERATORS, where the calls were placed using an ATDS, without the express prior consent of the recipient as required by the TCPA, the class member was listed on the Federal Do Not Call list; and the JOHN DOE LEAD-GENERATOR(S) continued to call the person *after* being told to stop calling.

WHEREFORE, Plaintiff and similarly situated putative class members are entitled to the following relief:

a. Declare that the telephone calls placed by Modernize violated the TCPA's do-not-call list prohibition;

b. Declare that any telephone calls placed by the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS violated the TCPA's do-not-call list prohibition;

c. Declare that Modernize is vicariously liable for TCPA violations caused by the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    d.   Award statutory damages of at least $500 and up to $1,500 for each violation where there calls placed after recipients told one or more of the Defendants to stop calling; and

    e.   Enjoin future violations of the TCPA.

## XI.    THIS CASE CAN BE MAINTAINED AS A CLASS ACTION

302.    Plaintiff can satisfy the elements of Federal Rule of Civil Procedure 23.

303.    Plaintiff reserves the right to modify the above class definitions in response to any argument advanced by Modernize that may contend that one or more of the above classes constitute so-called "failsafe" classes.

304.    Plaintiff reserves the right to modify the above class definitions in response to discovery that may demonstrate that one or more of the JOHN DOE DEFENDANTS placed the telephone calls at issue.

305.    Putative class members can be administratively ascertained from business records maintained by the Defendants. *See, e.g., In re Community Bank of Northern Virginia Mortg. Lending Practices Litigation*, 795 F.3d 380, 397 (3d Cir. 2015) (finding that the Plaintiff's proposed class was ascertainable because the defendant "possesse[d] all of the relevant bank records needed to identify the putative class members").

### A. Numerosity

306.    Numerosity is satisfied because Defendants (individually and collectively) called at least forty (40) residents of the State of Arizona in the same manner that Defendants called Plaintiff through-automated dialing technology prohibited by the TCPA: by through (a) automated dialing technology prohibited by the TCPA – either through and ATDS; and (b) without consent of the person called.

307.    Joinder of all members of the Class is impracticable.

### B. Commonality and Predominance

308.    The elements of is commonality and predominance are satisfied.

309.    As to the TCPA based classes, commonality exists because Defendants acted in a common manner toward Plaintiff and the proposed class members by calling Plaintiff and the proposed class members in the same way:  (a) through-automated dialing technology prohibited by the TCPA – either through and ATDS; and (b) without consent of the person called.

310.    There are questions of law and fact common to the claims of Plaintiff and members of the proposed classes, including;

      a.      whether the dialing systems used by the Defendants qualify as an ATDS under the TCPA;
      b.      whether the Defendants violated the TCPA;
      d.      whether the Defendants can demonstrate consent; and
      e.      whether the conduct described herein was intentional so as to warrant treble or punitive damages of up to $1,500 per call.

## C.  Typicality

311.    Plaintiff's claims are typical of the claims of the proposed Class, as the calls that Defendants placed were the same or substantially similar to those received by the proposed class members.

312.    Plaintiff and the proposed class members' claims all arise from the same operative facts and are based on the same legal causes of action.

313.    Plaintiff and each of the proposed class members are all subject to the same illegal calling techniques employed by Defendants.

## D.  Appropriateness and Superiority

314.    A class action is an appropriate method for the fair and efficient adjudication of this controversy, and superior to other available methods for the fair and efficient adjudication of this controversy.

315.    The common questions of law and fact enumerated above predominate over questions affecting only individual Class members.

52

316.    The likelihood that individual Class members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, as well as the absence of a fee shifting mechanism.

317.    As such, the expense and burden of individual litigation would make it impracticable for proposed Class members to prosecute their claims individually.

**E. Plaintiff and Class Counsel Are Adequate**

318.    Plaintiff and proposed class counsel will fairly, adequately and vigorously represent and protect the interesats of the proposed class members and has/have no interest antagonistic to those of the putative classes.

319.    There are no defenses unique to Plaintiff.

320.    Plaintiff is not a member of the putative class action provisionally certified in the case of *Hopkins v. Modernize*, 17-cv-40087 (D. Mass).

321.    Plaintiff, to the best of his recollection, never received notice of the proposed class action settlement in the case of *Hopkins v. Modernize*, 17-cv-40087 (D. Mass).

322.    Plaintiff was never sent notice of the proposed class action settlement in the case of *Hopkins v. Modernize*, 17-cv-40087 (D. Mass) because he is not a member of the putative class action.

323.    The proposed class action settlement in the case of *Hopkins v. Modernize*, 17-cv-40087 (D. Mass) did not resolve all potential TCPA liability against Defendant Modernize.

324.    Plaintiff's lead attorney (James C. Vlahakis) is an experienced consumer class action litigator who has defended over a hundred consumer-based claims since 1998 and has litigated over forty TCPA based putative class actions.  For example:

    a.  In conjunction with class counsel, Mr. Vlahakis has obtained Court approval of numerous TCPA class actions.  *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar TCPA based automated dialing system

53

settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar TCPA based automated dialing system wrong party settlement); *INSPE Associates v. CSL Biotherapries, Inc*. (N.D. Ill.) ($3.5 million fax based settlement);

b.   Additionally, Mr. Vlahakis (as a former consumer class action defense attorney) has gained court approval of dozens of **FDCPA** class actions;

c.   Mr. Vlahakis understands the types of defenses that are typically raised in TCPA class actions because he defeated a putative plaintiff's attempt to certify a TCPA class action in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013);

d.   Mr. Vlahakis has also caused a previously certified TCPA class action to be decertified in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012);

e.   In litigating TCPA class actions, Mr. Vlahakis has ascertained the identities of putative class members individually and in conjunction with industry experts;

f.   Mr. Vlahakis has also filed and argued petitions for declaratory relief before the FCC;

g.   Mr. Vlahakis has never had a state attorney general or U.S. Attorney General for any district object to a case where Mr. Vlahakis and class counsel have jointly petitioned a district court for certification; and

h.   Lastly, Mr. Vlahakis has utilized third-party class notice providers to issue notice and payments to class members.

325.   Defendants are not aware of any circumstances that would render Mr. Vlahakis to be unqualified to be class counsel in this case.

**F.   Injunctive and Declaratory Relief Are Warranted**

326.   FRCP 23(b)(2) provides that injunctive and declaratory relief are proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class."

327.   Here, the above violations apply generally to the proposed classes.

328.   For the above reasons, this Court should declare Defendants' misconduct unlawful and enjoin Defendants from further violating the TCPA.

329.    As a result of these violations, Plaintiff and each class member is entitled to $500 per violation and up to $1,500 per violation.

WHEREFORE, Plaintiff and similarly situated putative class members are entitled to the following relief:

      a.  Declaratory relief in the form of declaring that the telephone calls placed by the Defendants violated the TCPA;

      b.  Declaring that the telephone calls placed by or otherwise JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS violated the TCPA;

      c.  Declaring that Modernize is vicariously liable for telephone any TCPA violations caused by the JOHN DOE DEFENDANT HOME IMPROVEMENT PROVIDERS and/or JOHN DOE DEFENDANT LEAD-GENERATORS;

      d.  Awarding statutory damages of at least $500;

      e.  Awarding $1,500 for each violation where there calls placed after recipients told one or more of the Defendants to stop calling; and

      f.  Injunctive relief to prohibit future violations of the TCPA.

***Plaintiff hereby demands a trial of this civil action by jury.***

Respectfully submitted,

Plaintiff NICK FISHER, individually
and on behalf of all others similarly situated,

By: /s/ James Vlahakis
James Vlahakis, Esq. (*pro hac vice*)
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
Telephone: (630) 581-5456
jvlahakis@sulaimanlaw.com